**Eduardo Rivas DELGADO, Appellant**

**v.**

**The STATE of Texas.**

**No. PD–0203–07.**

Court of Criminal Appeals of Texas.

Sept. 26, 2007.

13. *See McNac v. State,* 215 S.W.3d 420, 424 (Tex.Crim.App.2007); *Johnston v. State,* 145 S.W.3d 215, 224 (Tex.Crim.App.2004).

J.R. Molina, Fort Worth, for Appellant.

Michael Casillas, Asst. D.A., Fort Worth, for State.

### OPINION

COCHRAN, J., delivered the opinion of the Court in which Meyers, PRICE, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined.

We granted appellant's petition for discretionary review to resolve a conflict between various courts of appeals.[1] Some courts of appeals have held that a trial court must, *sua sponte,* include a reasonable-doubt instruction in the jury charge when the State offers evidence of an extraneous offense at the guilt stage of a criminal trial.[2] Others, including the Second Court of Appeals in this case,[3] have held that a trial judge must include such an instruction only when requested by the defendant. We agree with the latter position, and thus we affirm the court of appeals.

### I.

Appellant was charged with one count of possession with intent to distribute between four and 200 grams of cocaine and a second count of simple possession of between four and 200 grams of cocaine.

The evidence at trial showed that undercover narcotics officers were conducting surveillance of the Mi Casa bar, a well-known site for drug sales. One of the officers saw a woman go into the bar, then come out a few minutes later. A man, Carlos Morales, then came out of the bar and called out to her. She came over to him, took "something" from Morales's hand, and handed him money. Then she left. The officer suspected that he had just seen a drug sale.

Officers detained Morales and found cocaine in his pocket. Morales told the officers that he had gotten the cocaine from a man sitting at the bar in Mi Casa. He described that man and his location in the bar.

When undercover officers entered Mi Casa, they saw appellant sitting at the bar. He matched Morales's description of the man who had supplied him with the cocaine. As the officers approached, appellant saw them. He reached into his pocket, took something out, then boosted himself up, and dropped that "something" behind the bar. One officer went behind

---

1. Tex.R.App. P. 66.3(a). Appellant's sole ground for review states:
 This court of appeals' decision conflicts with another court of appeals' decision on the same issue, viz: whether a trial court should include a *sua sponte* reasonable doubt instruction regarding extraneous offense evidence in the guilt-innocence phase of a trial absent a defense request for such or an objection to the omission of said instruction.

2. *See Rodgers v. State,* 180 S.W.3d 716, 719–20 (Tex.App.-Waco 2005, no pet.); *Chapa v. State,* No. 04-02-00346-CR, 2003 WL 1025148, at *2–3, 2003 Tex.App. LEXIS 2091, at *3–4 (Tex.App.-San Antonio Mar. 12, 2003, pet. ref'd) (not designated for publication); *Arnold v. State,* No. 05-01-01733-CR, 2002 WL 31569537, at *1, 2002 Tex.App. LEXIS 8186, at *3–4 (Tex.App.-Dallas Nov. 20, 2002, no pet.) (not designated for publication).

3. *Delgado v. State,* No. 02-06-115-CR, 2006 WL 3525363, at *1–2, 2006 Tex.App. LEXIS 10498, at *5 (Tex.App.-Fort Worth 2006); *see also Brown v. State,* No. 11-06-00218-CR, —— S.W.3d ——, —— – ——, 2007 WL 2671376, 2007 Tex.App. LEXIS 7458, at *19–23 (Tex. App.-Eastland Sept. 13, 2007); *Allen v. State,* 180 S.W.3d 260, 266 (Tex.App.-Fort Worth 2005, no pet.); *Rodriguez v. State,* 137 S.W.3d 228, 231 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Gilbert v. State,* No. 14-02-00727-CR, 2003 WL 22176625, at *4, 2003 Tex.App. LEXIS 8158, at *11–12 (Tex.App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem.op.) (not designated for publication); *Salazar v. State,* No. 07-01-0389-CR, 2002 WL 246642, at *3, 2002 Tex.App. LEXIS 1335, at *9–10 (Tex.App.-Amarillo Feb. 21, 2002, pet. ref'd) (not designated for publication).

the bar and discovered two clear plastic baggies containing a total of 0.81 grams of cocaine on top of a trash container. Each baggie had a picture of dice on it.

The officers arrested appellant and took him outside. Appellant consented to a search of his car, which was in the Mi Casa parking lot. The officers found seven individually wrapped plastic baggies in a zippered pouch inside the car. The total weight of the cocaine in those seven baggies was 4.92 grams. Two of those baggies had the same picture of dice on them that the baggies found behind the bar had.

The jury acquitted appellant on the first count, possession with intent to distribute between four and 200 grams of cocaine, but convicted him of simple possession of between four and 200 grams of cocaine. The trial judge sentenced him to three years' confinement, suspended the sentence, and placed him on five years' community supervision.

The State had filed a pretrial Notice of Intent to Offer Extraneous Offenses that stated:

> Before being arrested for the charged offense, the Defendant, on or about September 10, 2004, did deliver cocaine of an unknown amount to Carlos Morales at the Mi Casa Bar, in Fort Worth, Tarrant County, Texas.

Immediately before trial began, appellant's attorney noted that the State had filed a written notice concerning this "extraneous offense" and asked that the prosecutor approach the bench before mentioning it. The prosecutor responded that he filed that notice in an abundance of caution, but that he intended to offer this evidence at the very beginning of the trial

because it showed how and why the officers approached appellant as he sat in the bar. The prosecutor invoked the concept of "same transaction contextual evidence" without explicitly using the term. The trial judge inquired whether both events had occurred in the same time frame, and, when the prosecutor said that they were just minutes apart, the judge agreed that the evidence was admissible.

Appellant's attorney did not object to any of the evidence concerning Morales, the transaction between Morales and the unknown woman, or Morales' statement about appellant supplying the cocaine. He did not ask for a limiting instruction at the time the evidence was offered or at the jury-charge conference. When the trial judge gave copies of his proposed jury charge to both sides and asked if there were any objections, appellant's attorney did not request any instruction on extraneous offenses or object to the lack of any such instruction in the jury charge.

In his sole issue on appeal, however, appellant claimed that the trial judge erred by not *sua sponte* including a reasonable-doubt instruction on extraneous-offense evidence in the jury charge.[4] The court of appeals, relying upon its prior opinion in *Allen v. State*,[5] held that the trial judge did not err by failing to give such an instruction *sua sponte*. It affirmed appellant's conviction.

## II.

Article 36.14 of the Code of Criminal Procedure requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case."[6] But who decides what law is "ap-

---

4. *Delgado*, 2006 WL 3525363, at *1–3, 2006 Tex.App. LEXIS 10498, at *4.

5. 180 S.W.3d 260, 266 (Tex.App.-Fort Worth 2005, no pet.).

6. Tex.Code Crim Proc art. 36.14.

plicable" to the case, and when is that decision made? This issue has bedeviled Texas criminal law since its earliest days. As early as 1857, the Texas Supreme Court held that if a party in a criminal trial believes that a certain law is applicable to the case, he must bring that law to the attention of the trial court and request an instruction on it or object to its omission:

> The error assigned in the charge of the court, is, in substance, that it does not distinguish and define the degrees of murder. But it must be observed that the mere omission to give instructions is not error. The court is not bound in any case to give instructions not asked for by the party. If the charge of the court was not satisfactory, it was the right of the defendant, or his counsel, to ask [for] such instructions as he thought proper. If he omitted to ask particular instructions, he cannot assign as error the omission of the court to give them.[7]

However, even in the earliest days, there was tension between the parties' responsibility to bring "the applicable law" to the trial court's attention in a timely manner and the right to a "fair and impartial trial," including the right to have the jury correctly instructed about "the applicable law."[8] As noted by Judge Clinton in *Al-*

*manza v. State,*[9] this Court was less than consistent in its treatment of jury-charge omissions and errors on appeal and which "fundamental" errors could be cause for reversal when the defendant neither objected at trial nor supplied a desired instruction.[10]

Thus, the 1913 Legislature "introduced a new concept: reversals on account of error in the court's charge would be reduced if [errors and omissions were] first pointed out to the trial court *before* its charge was given to the jury."[11] It amended article 735—the forerunner to article 36.14—to require the trial court to give the defendant or his counsel "a reasonable time to examine [the proposed jury charge] and ... present his objections thereto in writing, distinctly specifying each ground of objection."[12] The Legislature simultaneously amended several other articles to ensure that both sides would have a reasonable time to present additional charges and that the trial judge had the opportunity to incorporate any changes based upon those objections and requests into his final charge.[13] Presiding Judge Onion explained,

> The 33rd Legislature in 1913 was concerned with the large number of criminal convictions reversed because of what

---

**7.** *O'Connell v. State,* 18 Tex. 343, 363 (1857).

**8.** *See, e.g., Bishop v. State,* 43 Tex. 390, 403–04 (1875) (reversing defendant's cattle theft conviction for two errors in the jury charge, one error that was properly objected to during trial, the other unobjected to but "apparent on the record, and deemed to be an error calculated to injure the rights of the defendant").

**9.** *See generally, Almanza v. State,* 686 S.W.2d 157, 161–72 (Tex.Crim.App.1984) (op. on reh'g) (discussing the historical judicial and legislative development of how jury charges are compiled and presented to the parties for their additions and objections, as well as how

jury charge errors should be treated on appeal).

**10.** *Id.* at 172 ("We will not pretend that every case by this Court since 1913 has used a 'fair and impartial trial' test for fundamental error. Far from it. But given the confusion in the area a certain number of cases are simply going to be wrong.").

**11.** *Id.* at 164.

**12.** *Id.* at 164 n. 10 (setting out a side-by-side comparison of the pertinent 1911 Code provisions and the 1913 amended provisions).

**13.** *Id.*

today's majority refers to as "ordinary reversible error" in the court's charges due to then existing procedural rules. The Legislature sought to require timely objections, etc., to the charge at the time of trial to prevent the trial judge from being sand-bagged by post trial complaint and thus reversed on appeal.[14]

In *Almanza*, this Court addressed the appellate consequences of failing to object to the trial court's omission or erroneous description of "the law applicable to the case." If the defendant fails to object or request an instruction before the trial court reads the charge to the jury, then error in the charge is reversible only if it causes "egregious harm" to the defendant.[15]

■ But *Almanza* did not address who is responsible for deciding what *is* "the law applicable to the case." The purpose of the jury charge, of course, "is to inform the jury of the applicable law and guide them in its application to the case: ' "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." ' " [16] Obvious-

ly, the trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions. He must ensure that all of the law applicable to the criminal offense that is set out in the indictment or information is incorporated into the jury charge as well as the general admonishments, including reference to the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth. Here he has a *sua sponte* duty—a duty to act without any request or objections from the parties.

■ The trial judge has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged.[17] But it does not inevitably follow that he has a similar *sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics. For example, in *Posey v. State*,[18] this Court stated that "which defensive issues to request are strategic decisions generally left to the lawyer and client." [19] Similarly, as Profes-

---

14. *Id.* at 176 (Onion, P.J., concurring and dissenting).

15. *Id.* at 171.

16. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim.App.1996) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex.Crim.App.1977)).

17. *See Doyle v. State*, 631 S.W.2d 732, 738 (Tex.Crim.App.1982) (plurality op.) (concluding that trial court's failure to include a culpable mental state in its paragraph in the jury charge applying the law to the facts was reversible error because it eliminated an essential element and infringed on defendant's right to a fair jury trial). In *Doyle*, we stated,

> Art. 36.14, V.A.C.C.P., places the legal duty and responsibility on the trial judge to prepare for a jury a proper and correct charge on the law, and the law as may be applied

to the facts adduced. This is a legal duty which must be performed by the trial judge. It may not be delegated to the attorneys for the respective parties, the court reporter of the court, or anyone else for that matter.

*Id.* (footnote omitted).

18. 966 S.W.2d 57 (Tex.Crim.App.1998).

19. *Id.* at 63. In *Posey*, the Court also noted,

> For example, in a case like this, the lawyer and the client could decide not to request the defensive issue and risk losing their credibility with the jury because the evidence raising the defense is so unworthy of belief. Decisions as to the defensive theory of a case should be left to the defendant and his lawyer. This also is consistent with Article 36.14's mandate permitting a defendant to request various charges at the risk of procedural default by his silence.

sor Dix has noted, both "prosecution and defense strategy often revolves around issues that involve diminished culpability, but not acquittal in the form of lesser included offense jury instructions."[20] Thus, if neither side requests a lesser-included instruction, the trial court need not submit one *sua sponte.*[21] Professor Dix states,

> Because of the strategic nature of the decision, it is appropriate for the trial court to defer to the implied strategic decisions of the parties by refraining from submitting lesser offense instructions without a party's request. It is clear that the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one. Likewise, any error in the improper submission of a lesser included instruction is waived if the defense fails to object to the instruction.[22]

Furthermore, Texas courts have frequently stated that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy.[23] This is in accord with federal precedent as well, in which trial courts are generally wary of giving a limiting instruction *sua sponte* because a party might well intentionally forego a limiting instruction as part of its "deliberate ... trial strategy to minimize the jury's recollection of the unfavorable evidence."[24] It is only when the evidence in question "is so obviously admissible for a limited purpose and so clearly threatens serious prejudice to the opponent," that federal courts will occasionally apply the "plain error" doctrine and reverse a conviction in the absence of a request for a limiting instruction.[25]

*Id.* (footnote omitted).

**20.** 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 36.50 at 201 (Supp.2006)

**21.** *Id.* at 202.

**22.** *Id.* (footnote omitted); *see, e.g., Druery v. State,* 225 S.W.3d 491, 505 (Tex.Crim.App. 2007) (capital murder defendant estopped from claiming on appeal that trial court erred in failing to *sua sponte* give instruction on lesser-included offense of murder when defendant affirmatively requested that it not be given); *id.* at 512–13 (Keller, P.J., concurring) (stating that estoppel doctrine need not be invoked because "[i]t is enough to say that a lesser-included offense instruction is a kind of defensive issue that does not become law applicable to the case if appellant fails to request it.") (footnote omitted).

**23.** *See, e.g., Ryan v. State,* 937 S.W.2d 93, 104 (Tex.App.-Beaumont 1996, pet. ref'd) (citing *Blevins v. State,* 884 S.W.2d 219, 230 (Tex. App.-Beaumont 1994, no pet.)).

**24.** *United States v. Johnson,* 46 F.3d 1166, 1171 (D.C.Cir.1995); *United States v. Rhodes,* 62 F.3d 1449, 1453–54 (D.C.Cir.1995) (burden is clearly on defense counsel to request limiting instruction); *see generally,* Daniel D. Blinka, *Ethics, Evidence, and the Modern Adversary Trial,* 19 Geo. J. Legal Ethics 1, 19 (2006) (noting that opponent of evidence will "frequently forego limiting instructions for fear that they will only emphasize the damaging inference"); 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 41 at 219–20 (2d ed. 1994) ("As the phrasing of [Rule 105] indicates, it is incumbent on trial counsel to request limiting instruction where desired, and ordinarily it is not reversible error to admit evidence without such instructions when no request is made.").

**25.** MUELLER & KIRKPATRICK, § 41 at 221–222 (collecting cases). As Professors Mueller and Kirkpatrick explain, requiring the opponent to request the trial judge to limit the scope of the evidence by instructing the jury

> appropriately leaves to the opposing trial counsel the option of concluding that, as a matter of strategy, he is better off without an instruction than with one, in that an instruction would serve only to remind the jury of what it has heard or to re-emphasize the evidence in the minds of the jurors, and

 This Court has previously held that, if a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge.[26] This doctrine is a sensible one because otherwise a jury might sit through most of a trial under the mistaken belief that certain evidence is admissible for all purposes when, in fact, it is not.[27] Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes.[28] But even when a party properly

requests a limiting instruction at the time the evidence is first offered, the trial judge need not give an instruction on the burden of proof at that time.[29] Taking the cases together, then, a limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction at the time the evidence was first admitted. When the defendant has properly requested a limiting instruction in the jury charge, the trial court must also include an instruction on the State's burden of proof at that time.[30]

perhaps to suggest to the jury a use for the evidence which is best left unmentioned. *Id.*

**26.** *Hammock v. State,* 46 S.W.3d 889, 894 (Tex.Crim.App.2001); *see, e.g., Martin v. State,* 176 S.W.3d 887, 899 (Tex.App.-Fort Worth 2005, no pet.) (when defendant asked for a limiting instruction on the use of extraneous offense evidence long after he made original objections to testimony, evidence had already been admitted for all purposes; defendant forfeited any error concerning trial court's failure to give limiting instruction); *Prescott v. State,* 123 S.W.3d 506, 515–16 (Tex.App.-San Antonio 2003, no pet.) (defendant who failed to request limiting instruction concerning use of extraneous offenses "at the moment the evidence [was] admitted" was not entitled to limiting instructions in jury charge).

**27.** *See Jackson v. State,* 992 S.W.2d 469, 477 (Tex.Crim.App.1999). In *Jackson,* we stated that

when an extraneous offense is admitted in the guilt phase of a trial, failing to give a limiting instruction at the time of admission may result in the jury drawing inferences about the defendant's guilt based upon character conformity, a use of the evidence that was not contemplated by the trial court. The danger then becomes that the improper inference drawn cannot later be erased by an instruction in the charge. *Id.*

**28.** *Hammock,* 46 S.W.3d at 895; *Rankin v. State,* 974 S.W.2d 707, 712 (Tex.Crim.App. 1996).

**29.** *Jackson,* 992 S.W.2d at 477. We noted that the

burden of proof is typically a question jurors encounter when all of the evidence has been taken. If proof that a defendant committed an extraneous offense is weak, jurors are just as likely to perceive that weakness after all of the evidence has been taken as they are when the extraneous offense was initially admitted. Therefore, we hold that a trial court is not required to give an instruction concerning the burden of proof at the time evidence of unadjudicated offenses and bad acts is admitted. *Id.*

**30.** *Ex parte Varelas,* 45 S.W.3d 627, 631–32 (Tex.Crim.App.2001) (noting that, at the guilt stage of a criminal trial, the defendant has the burden to request an instruction limiting consideration of extraneous offenses, and, when he does so, the trial court must also instruct the jury, in its jury charge, on the burden of proof); *Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996) ("[I]f a defendant, during the guilt/innocence phase, asks for an instruction to the jury on the standard of proof required for admitting extraneous offenses, the defendant is entitled to that instruction."); *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994) (stating that "if the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense.").

The rule is somewhat different during the punishment phase of a non-capital case because a specific statutory provision applies to the use of extraneous offense evidence at that time. During the punishment phase, extraneous offense evidence may be offered for *any* relevant purpose, including proof of the defendant's character or propensity.[31] Article 37.07, § 3(a)(1) of the Texas Code of Criminal Procedure states, in pertinent part,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for

which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.[32]

Under article 37.07, the Legislature has deemed that extraneous offense evidence is admissible for any relevant purpose during the punishment phase, but only if the State can offer proof that would allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that the defendant could be held criminally responsible for that act.[33] Article 37.07 is "the law applicable" to all non-capital punishment proceedings. Thus, the trial judge must *sua sponte* instruct the jury at the punishment phase concerning that law, including the fact that the State must prove any extraneous offenses beyond a reasonable doubt.[34]

## III.

In the present case, appellant argues that the trial judge should have *sua sponte* given the jury an instruction at the guilt phase concerning the State's burden

31. *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim.App.1999). We stated,

> For purposes of assessing punishment, the prosecution may offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible. Prior crimes or bad acts are introduced to provide additional information which the jury may use to determine what sentence the defendant should receive.

*Id.* (citation omitted).

32. Tex.Code Crim. Proc. art. 37.07, § 3(a)(1).

33. *Fields,* 1 S.W.3d at 688.

34. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000) (holding that article 37.07, § 3(a)(1), is the law "applicable to the case" and thus the trial judge must *sua sponte* give

an instruction on the burden of proof concerning extraneous offenses offered at the punishment stage of a non-capital trial). In *Huizar*, this Court distinguished *Posey* and explained the difference between instructing the jury on "defensive" issues and instructing them on the law that is applicable to all cases:

> In *Posey, supra,* we held that "a defensive issue is not [law] 'applicable to the case' for purposes of article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge." In contrast to a "defense" which depends on the defendant's theory of the case and the evidence presented, applicability of article 37.07 § 3(a) is not contingent on either party's theory of the case. Rather, article 37.07 § 3(a) is a legislatively prescribed burden of proof applicable to extraneous offense and bad act evidence admitted at punishment *in all non-capital cases.*

*Id.* at 484 n. 7 (citation omitted).

of proof for extraneous offenses. He contends that the trial judge had such a duty even though appellant never (1) objected to the admission of the evidence when it was offered, (2) requested a limiting instruction at the time the evidence was admitted, (3) requested any limiting instruction in the jury charge, or (4) requested any burden-of-proof instruction concerning the extraneous offense in the jury charge. Appellant argues that, since the trial judge does have such a duty at the punishment phase (because article 37.07, § 3(a)(1) explicitly requires such an instruction), it naturally follows that the trial judge has that same duty during the guilt phase, even though there is no statutory or legal requirement to give *any* instructions concerning the use of extraneous offenses absent a timely request. Appellant is mistaken.[35]

As explained above, a defendant is entitled to limiting instructions on the use of extraneous offenses during the guilt phase only if he timely requests those instructions when the evidence is first introduced. Appellant did not do so. Here, both the State and the trial judge implicitly concluded that the evidence that Morales told the arresting officers that he had obtained cocaine from appellant in Mi Casa was "same transaction contextual evidence" offered to show why the officers approached appellant in the bar. "Same transaction contextual evidence" refers to those events and circumstances that are intertwined, inseparable parts of an event that, if viewed in isolation, would make no sense at all.[36] When evidence is admitted on this basis, Rule 404(b) is not implicated and the defendant is not entitled to any limiting instruction concerning the use of that evidence.[37]

35. The Waco Court of Appeals made this same mistake in *Rodgers v. State*, 180 S.W.3d 716 (Tex.App.-Waco 2005, no pet.), in holding that trial court must *sua sponte* instruct the jury on the burden of proof concerning the use of extraneous offenses, even when the defendant has not requested a limiting instruction at the time the evidence was originally offered or in the jury instructions. And the courts of appeals that have followed *Rodgers* fell into the same error. *See Chapa v. State*, 2003 WL 1030376, 2003 Tex.App. LEXIS 2091, No. 04–02–00346–CR (Tex.App.-San Antonio Mar. 12, 2003, pet. ref'd) (mem.op.) (not designated for publication); *Arnold v. State*, 2002 WL 31569537, 2002 Tex.App. LEXIS 8186, No. 05–01–01733–CR (Tex.App.-Dallas Nov. 20, 2002, no pet.) (not designated for publication).

36. *See Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972) (noting that this background evidence is admitted to "show the context in which the criminal act occurred ... under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence"); *see Lockhart v. State*, 847 S.W.2d 568, 571 (Tex.Crim.App.1992) (extra-

neous offenses were indivisibly connected to charged offense and necessary to State's case to explain context; here, evidence that defendant attempted to make drug purchase and drove car with stolen license plates relevant to context of capital murder); *see also Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim. App.1993) (in capital murder case, evidence of kidnapping and double murder of deceased homeowner's wife and son was "'[s]ame transaction contextual evidence' ... [that] imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. As such it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged.") (citation omitted).

37. *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim.App.2002) (reiterating that same transaction contextual evidence is admissible without a limiting instruction); *Wesbrook v. State*, 29 S.W.3d 103, 114–15 (Tex.Crim.App.2000) (stating that, even if defendant had requested a limiting instruction concerning use of same-transaction contextual evidence, it would not have been "appropriate" to give one); *Camacho*, 864 S.W.2d at 535.

Because appellant never objected to the State's rationale or to the trial judge's conclusion that the evidence concerning Morales was admissible as same-transaction contextual evidence, it can be fairly inferred that he, too, agreed that this evidence was admissible on this basis. Therefore, he did not request a limiting instruction either at the time the evidence was admitted or in the jury charge because no such limiting instruction would be appropriate. Similarly, appellant apparently did not request any jury instruction on the State's burden of proof for extraneous offenses offered under Rule 404(b) because no such instruction would be appropriate. At least, from his silence, trial counsel never indicated otherwise to the trial judge.

Regardless of whether trial counsel actually agreed that the evidence was admissible for all purposes, he may well have decided, as a matter of trial strategy, not to object to its admission or request a limiting instruction. He may not have wanted to emphasize the evidence that appellant apparently delivered cocaine to Morales who sold it to the unknown woman. If this was trial counsel's conscious strategy, it was an eminently successful one. The jury did not convict appellant of possession with intent to deliver cocaine, but convicted him only of the lesser offense of simple possession of cocaine.

Even if a limiting instruction on the use of an extraneous offense would have been appropriate here under Rule 404(b), the trial judge had no duty to include one in the jury charge for the guilt phase because appellant failed to request one at the time the evidence was offered.[38] Because the trial judge had no duty to give *any* limiting instruction concerning the use of an extraneous offense in the guilt-phase jury charge, it naturally follows that he had no duty to instruct the jury on the burden of proof concerning an extraneous offense.

This case exemplifies the appropriateness of the general rule that a trial court is not required to instruct the jury *sua sponte* on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase. We therefore affirm the judgment of the court of appeals.

KELLER, P.J., filed a concurring opinion.

WOMACK, J., concurred.

KELLER, P.J., filed a concurring opinion.

Crucial to the Court's analysis is its determination that the evidence at issue constituted "same transaction contextual evidence" [1] and a party is not entitled to a limiting instruction with respect to that type of evidence. Because the trial judge had no duty to give a limiting instruction for that type of evidence, the Court concludes that he also had no duty to give a burden of proof instruction.[2] That conclusion, however, does not depend upon whether appellant *requested* the instruction; limiting instructions are *never* required for same transaction contextual evidence.[3] If entitlement to a burden of proof instruction depends upon entitlement

---

**38.** *See, e.g., Brown v. State*, No. 11-06-00218-CR, —— S.W.3d ——, ——, 2007 WL 2671376, *7, 2007 Tex.App. LEXIS 7458, at *19–23 (Tex.App.-Eastland Sept. 13, 2007).

**1.** This type of evidence has also historically been referred to as "res gestae."

**2.** Court's op. at 254.

**3.** *Castaldo v. State*, 78 S.W.3d 345, 347–48, 352 (Tex.Crim.App.2002)(limiting instruction not required despite request).

to a limiting instruction,[4] and a party is never entitled to a limiting instruction for same transaction contextual evidence, then, necessarily, a party is never entitled to a burden of proof instruction for same transaction contextual evidence. Consequently, the Court does not really resolve the issue framed at the beginning of its opinion and articulated in appellant's ground for review: whether an instruction on burden of proof for *extraneous offenses* admitted at the guilt phase must be included *sua sponte* or only upon request.

I do not disagree with the Court's ultimate resolution of the case, and the issue addressed is one we have also not resolved, but it is not the issue squarely presented in appellant's petition.

---

4. The explanation for the Court's link of limiting instructions and burden of proof instructions is not clear to me. The question that comes to my mind is: Even if appellant is not entitled to a limiting instruction, how does that prevent him from being entitled to a burden of proof instruction? The answer to that question in the context of same transaction contextual evidence is that that type of evidence is treated like any other fact relating to the offense charged. A burden of proof instruction with respect to the elements of the charged offense suffices to cover the broad range of subsidiary facts that might be elicited during the prosecution of that offense. The capital sentencing context is analogous in this regard. *See Kutzner v. State*, 994 S.W.2d 180, 188 (Tex.Crim.App.1999)("so long as the jury has been properly instructed concerning the burden of proof with regard to the special issues, the trial court does not err in failing to submit in the punishment jury charge a separate instruction on the burden of proof on extraneous offenses").