**MODIFY and AFFIRM; and Opinion Filed August 20, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00378-CR**

**JEFFREY ALLEN STEELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-00780-R**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice O'Neill

A jury convicted appellant Jeffrey Allen Steele of entering a habitation and committing aggravated assault with a deadly weapon. After finding the enhancement paragraph true, the jury sentenced him to life imprisonment. On appeal, he argues (1) the trial court abused its discretion by admitting extraneous offense evidence; (2) the trial court abused its discretion by admitting State's Exhibit 104 because the rule of optional completeness was not invoked; (3) the evidence is insufficient to support the court-ordered reimbursement of attorney's fees; and (4) the evidence is insufficient to support the trial court's order for appellant to pay $244 in court costs. As modified, we affirm the trial court's judgment.

### Background

On May 4, 2011, appellant introduced himself to Carrie Sport as an old friend of her husband and told her he lived down the street. Appellant asked if he could borrow her cell

phone. Carrie went inside to get it and brought it back outside. She heard appellant tell the person on the phone his last name was Steele.

The next day, Carrie returned home around 4:45pm with her eighteen-month-old son. When she entered her home, she noticed a huge hole in the ceiling and some of her lingerie lying on the couch. She then saw appellant walking down the hallway. She recognized him from her interactions with him the previous day. Appellant asked why she was home early and asked where she kept any money. She said she did not keep any money in the house.

Carrie tried to run away with her son, but appellant grabbed them both and forced them into the bathroom. Appellant also put a knife or box cutter to her throat and threatened to kill them if they tried to leave the bathroom. Carrie then heard a splashing sound, and she feared appellant was pouring gasoline around the house. Her fears were confirmed when she tried to run with her child out of the bathroom, smelled the gasoline, and saw her couch on fire.

Appellant then hit her in the face, which caused her to slip and fall. She burned her arm on the couch. She tried to get up and run away, and she almost made it to the backyard before appellant grabbed her again and began choking her. Carrie testified she lost consciousness.

During the time she was unconscious, her neighbor, Jake Joplin, noticed flames coming from the house. When he saw Carrie, he assumed she was dead, but picked up her son and carried him to safety. Then he returned to Carrie, and appellant helped move her. When Carrie began to wake up, appellant fled the scene. The first words out of Carrie's mouth when she came to was that Jeff Steele tried to kill her and that he set her house on fire. She repeated this to several other people.

Carrie suffered a severely swollen jaw, a third degree burn to her arm, bruises on her neck, and scratches and abrasions to her body. Her son suffered a cut on his chin where

appellant cut him with a knife or box cutter in an attempt to intimidate Carrie before he set the house on fire.

Carrie later identified appellant in a photo array. Appellant was arrested the following day in his home. He pleaded not guilty to the charges, but a jury convicted him of entering a habitation and committing aggravated assault with a deadly weapon. This appeal followed.

## Admission of Extraneous Offense

In his first issue, appellant argues the trial court abused its discretion by allowing David Estefano, a State's witness, to testify that appellant appeared to be either high on drugs or coming off a high on the morning of the attack. He objected that such information was irrelevant, extraneous, and inadmissible under rule of evidence 403. The State responded the testimony was relevant and "same transaction contextual evidence." Further, the State argues harm, if any, did not substantially outweigh its probative value.

We review the admissibility of evidence under an abuse of discretion standard. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will conclude a trial court abused its discretion if its ruling lies "outside the zone of reasonable disagreement." *Id.*

Generally evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX. R. EVID. 404(b). Under certain circumstances, evidence may provide "same transaction contextual evidence." "Same transaction contextual evidence" refers to those events and circumstances that are intertwined, inseparable parts of an event that, if viewed in isolation, would make no sense at all. *See Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007); *see also Thomas v. State*, No. 05-07-00266-CR, 2008 WL 3906393, at *4 (Tex. App.—Dallas Aug. 26, 2008, pet. ref'd) (not designated for publication).

Such evidence is admitted to show the context in which the crime occurred "under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so they may realistically evaluate the evidence." *Delgado*, 235 S.W.3d at 253 n.36 (citing *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972)). However, only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence should that evidence be admitted. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993).

Courts have applied a two-part test in determining the admissibility of same transaction contextual evidence. *See Mayes v. State*, 816 S.W.2d 79, 84–87 (Tex. Crim. App. 1991). The first prong is to determine whether the evidence is relevant under rule of evidence 401. *Id*. at 85; *Rogers*, 853 S.W.2d at 32. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401.

Appellant argues whether or not he appeared high at 8 a.m. when the offense took place around 5 p.m. was not relevant because there was no evidence linking him to the use of drugs during the offense or that his motive to commit the offense was drug-related. We disagree. As noted, the State cannot try a case in a vacuum, and evidence that establishes the context of an offense is relevant. *Delgado*, 235 S.W.3d at 253 n.36.

Estefano testified he had a long-standing relationship with appellant and recognized that on the morning of the offense appellant was not his "normal" self, and it seemed like he was either high on drugs or coming down from a high. Appellant also asked Estefano for money. When appellant later broke into Carrie's house, she testified appellant asked her for money. Thus, the trial court's decision to admit the testimony fell within the zone of reasonable

disagreement that it was more probable than not that appellant broke into Carrie's house looking for money to buy drugs.

The next step under the *Mayes* test is whether the background evidence at issue is admissible as an exception under rule of evidence 404(b). *See Rogers*, 853 S.W.2d at 33. Admission of same transaction contextual evidence is such an exception. *Id.* Appellant argues the State could have easily avoided any questions regarding his behavior on the morning of the attack. The State responds the testimony actually assisted the defense's theory of appellant's presence at the scene.

The evidence showed that when Jake Joplin saw the house on fire and tried to help Carrie, appellant also helped move her. It was not until Carrie started to come to that appellant fled the scene. Estefano testified that appellant told him the reason he left was because he had drugs in his possession and did not want to get caught by the police. *See, e.g., Slaughter v. State*, No. 14-05-00863-CR, 2006 WL 2805564, at *3 (Tex. App.—Houston [14th Dist.] Oct. 3, 2006, no pet.) (mem. op., not designated for publication) (noting evidence of illegal drug possession helped prove why defendant intentionally fled from an officer).

As argued by the State, appellant cannot have it both ways. Either the evidence showed appellant was assisting Carrie and abruptly left because he possessed drugs he did not want the police to discover, or he did not want Carrie to identify him as her attacker. Because appellant appeared high earlier in the day, asked Estefano for money, and told Carrie he broke into her house because he was looking for money, we conclude the evidence established an affirmative link between his earlier condition and the offense rather than being mere background contextual evidence. Accordingly, the evidence was admissible as an exception under rule 404(b). Appellant's first issue is overruled.

**Rule of Optional Completeness**

In his second issue, appellant argues the trial court abused its discretion by admitting State's Exhibit No. 104, an audio recording of Carrie's police statement, because the rule of optional completeness was not invoked by the mere reference to her prior inconsistent statements.[1] The State concedes the trial court erred in admitting Carrie's statement in its entirety, as the rule was not implicated because appellant never tried to admit any portion of it into evidence. *See Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (noting the rule of optional completeness is not implicated until a party attempts to have a portion of a statement "given into evidence"). However, the State argues such error does not require reversal.

Appellant responds he was harmed by admission of the recording because the jury heard Carrie tell her "sobbing and emotional" story for a second time, and it "improperly bolstered the detective's testimony. We cannot agree with appellant.

A violation of an evidentiary rule that results in the erroneous admission of evidence is non-constitutional error. TEX. R. APP. P. 44.2(b); *Jones v. State*, 111 S.W.3d 600, 605 (Tex. App.—Dallas 2003, pet. ref'd). We disregard all non-constitutional errors that do not affect the appellant's substantial rights. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Id*.

The jury heard testimony from numerous witnesses, all of whom testified Carrie unequivocally identified appellant as her attacker. Carrie herself identified appellant as her attacker. Appellant himself admitted to Estefano he was in fact at her house on the day of the

---

[1] Carrie testified appellant cut her son's chin and hit her; however, when Detective Water's was asked whether Carrie told him these details in her original statement to him, he said she did not reveal either incident.

attack. While appellant characterizes Carrie's statement as "sobbing and emotional," only during a few minutes of the overall interview did Carrie sound emotional. For most of the interview, she kept her composure and explained the attack. Moreover, she did not reveal any evidence that was not already before the jury. Accordingly, we cannot conclude the admission of State's Exhibit 104 had a substantial and injurious effect or influence in determining the jury's verdict. Appellant's second issue is overruled.

## Reimbursement of Court-Ordered Attorney's Fees

In his third issue, appellant argues the trial court erred by ordering him to pay $8,000 in attorney's fees because he was determined to be indigent, and the record does not establish any material change in his financial circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(p) (West Supp. 2006) (noting a defendant is presumed to remain indigent for the remainder of the proceeding unless a material change in his financial circumstances occurs).

The State concedes no evidence was presented to the trial court establishing any change in financial circumstances and agrees the judgment should be reformed to delete the ordered $8,000 in attorney's fees. Accordingly, we sustain appellant's third issue and reform the judgment to delete the ordered $8,000 in attorney's fees.

## Reimbursement of Court-Ordered Court Fees

In his fourth issue, appellant argues the evidence is insufficient to support an order requiring him to pay $244 because the record does not contain a bill of costs and therefore, the judgment should be reformed to delete this amount. Following submission of this case, we ordered the Dallas County District Clerk to prepare and file a supplemental clerk's record containing a detailed itemization of the costs and fees assessed in this case along with an explanation of any abbreviations used to define costs and fees. *See* TEX. CODE CRIM. PROC. ANN. arts. 103.001, .006 (West 2006). The Dallas County District Clerk has complied with our

order.  Because the record now contains a bill of costs supporting the assessment of costs in the judgment, we conclude appellant's complaint is now moot.  *See Franklin v. State*, No. 05-12-00530-CR, 2013 WL 2446283, at *1 (Tex. App.—Dallas June 4, 2013, no pet.).  Appellant's fourth issue is overruled.

## Conclusion

We modify the trial court's judgment to delete the $8,000 in court-ordered attorney's fees.  As modified, we affirm the trial court's judgment.

<div style="margin-left:40%">

/Michael J. O'Neill/
_____
MICHAEL J. O'NEILL
JUSTICE

</div>

Do Not Publish
TEX. R. APP. P. 47

120378F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEFFREY ALLEN STEELE, Appellant

No. 05-12-00378-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00780-R.
Opinion delivered by Justice O'Neill,
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to delete the $8,000 in court-ordered attorney's fees. As modified, the trial court's judgment is **AFFIRMED**.

Judgment entered this 20th day of August, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE