

# In the Court of Criminal Appeals of Texas

No. PD-0574-19

ADRIAN VALADEZ,

*Appellant,*

v.

THE STATE OF TEXAS

On Appellant's Petition for Discretionary Review
From the Tenth Court of Appeals
McLennan County

YEARY, J., filed a dissenting opinion in which SLAUGHTER, J., joined.

The Court's opinion purports to apply the highly deferential abuse-of-discretion appellate standard for determining the admissibility

of extraneous misconduct evidence under 403 of the Texas Rules of Evidence. TEX. R. EVID. 403. But it does not *actually* defer to the trial court. The trial court's ruling, admitting the extraneous misconduct evidence in this case, fell within the "zone of reasonable disagreement." *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g on court's own motion) (appellate courts should not "intercede" in trial court's ruling with respect to Rule 403, so long as it "was at least within the zone of reasonable disagreement"). But this Court's opinion seems to simply substitute its own subjective view. In my view, this outcome is the result of three key mistakes.

First, the Court's opinion fails to acknowledge that it was "at least" within the zone of reasonable disagreement for the trial court to find that evidence of Appellant's prior connection to Austin Police Department (APD) marijuana cases had probative value to rebut Appellant's defensive theory that he was merely an innocent backseat passenger who was "just along for the ride." Those prior marijuana connections provided a reasonable inference that he would have recognized the pungent scent of the more than 18 pounds of that substance that was found in the car. The only degree of "similarity" necessary to support that ready inference is that the prior cases (in which he was determined to be "connected" to marijuana by APD) and his own prior conviction for possession of marijuana, demonstrate a level of sophistication with regard to that substance beyond that which the average non-marijuana-possessing public would have, and his having been previously associated with enough quantity of marijuana, by virtue of those multiple cases, that he would naturally have been exposed to its

distinctive odor.

Second, the Court's opinion mistakenly concludes that the later offense, involving possession of both marijuana and a deliverable amount of cocaine, was also inadmissible. Although Appellant was not charged in this case with possession with intent to deliver, his defense was that he was an innocent bystander, and not a drug mule like the other two occupants of the car. The trial court could reasonably have concluded that this evidence demonstrated a heightened level of sophistication with regard to the possession of illegal drugs, and that this level of sophistication with illegal drugs also went beyond that which would have been possessed by the average non-illegal-drug-possessing public. All of this could have led the trial court reasonably to conclude that the evidence was not substantially more prejudicial than probative, in that it tended fairly to rebut the claim that Appellant was just an innocent "along for the ride" passenger. It showed that Appellant was not simply an unwitting victim of the drug-running lifestyle, but instead a regular participant in it, who therefore more than likely knowingly possessed the marijuana in this case.

Third, and finally, the Court's opinion mistakenly focuses on the *form* of the State's extraneous misconduct evidence. That inquiry is not a part and parcel of any analysis of the admissibility of relevant extraneous misconduct evidence *under Rule 403*. Issues of personal knowledge, hearsay, and the "competence" of the evidence to establish the nature of the extraneous contraband, though they may have been raised at trial, were not brought forward in Appellant's direct appeal, nor were they resolved by the court of appeals. We did not grant

discretionary review to address those—at-best—ancillary issues. Neither have the parties briefed them here—and for good reason, since they play no role in determining admissibility as a function of Article IV of the Rules of Evidence: "Relevance and its Limits." The Court is mistaken to assume they are pertinent to the task at hand.

## I.   SOMETHING SMELLS HERE

The arresting officer in this case, Trooper Juan Rodriguez, testified that he could smell the odor of marijuana as soon as he approached the car, that the odor got stronger at the passenger side front door, and that it was particularly strong in the back seat, where Appellant was found. He testified that the odor of marijuana was about at seven or eight on a ten-point scale. The defensive theory at trial was that Appellant was unaware that the marijuana was in the trunk of the car—that he was "just along for the ride."[1] The State offered evidence

---

[1] During voir dire, Appellant's counsel proposed to the venire the following hypothetical:

> And so if you get pulled over and you say, "Well, now, I smell marijuana in the car," and you say, "Yeah, I smelled something funny too. I don't know anything about any marijuana, though," if they find it, do you think you're knowingly or intentionally possessing marijuana at that time?

He then followed up a venireman's answer to his hypothetical with this statement:

> That wouldn't be fair, would it? In my mind or what I'm saying, I don't think it would be fair to say, "Well, somebody smelled marijuana, so they have some duty to, you know, do a full canine search and make sure every crevice of the car didn't have anything in it if it's not -- under the circumstances.

RR. Vol. IV, p. 164. In opening statements, then, Appellant's counsel explained:

> Here's the heart of the matter and the question that's really before you, did Mr. Valadez know that this was in the trunk and did he have care, custody, control, and management of it. That's the question that's really before you. And you're going to hear evidence from here and through exhibits that he didn't know and that he didn't have care, custody, control, and management over it.

RR. Vol. V, p. 23.

In its case in chief, then, the State called Trooper Juan Rodriguez, who initiated the traffic stop. Trooper Rodriguez testified on direct examination that Appellant told him, "I'm along for the ride. I'm just going to see some girls. I don't know what any of that is." RR. Vol. V, p. 20. He also testified that Appellant said: "I'm just along for the ride." RR. Vol. V, p. 48. On cross examination by the defense, Rodriguez was asked whether Appellant ever changed his story about where he was going or what he was doing. Rodriguez responded that Appellant said that "he was just along for the ride." RR. Vol. V, pp. 92–93.

In a hearing outside the presence of the jury to determine the admissibility of the extraneous conduct evidence at issue here, the prosecutor explained:

> Judge, we feel that based on voir dire, opening statement, cross-examination of the witnesses by the defense that their theory is that this defendant had no knowledge of the marijuana that was in the car, had no intent to possess the marijuana that was in the car, and we're offering these things to show that he is not simply an innocent actor, essentially that a false impression is being left with the jury at this point that he is in the wrong place at the wrong time, and these cases can go to show that that is not the case. It would also go to show a lack of mistake.

RR. Vol. V, p. 162. The trial judge similarly explained his view as follows:

> [Defense Counsel], you-all have clearly placed before the jury, even during voir dire and opening statements and cross-examination of witnesses, that your client was simply along for the ride and had no knowledge of any contraband in the vehicle

that Appellant had been found to be "connected" to marijuana in APD cases on a half dozen prior occasions, and that he had been convicted at least once for misdemeanor marijuana possession. The prosecutor argued that this evidence was admissible to show that Appellant must be aware of its "distinctive" odor.

The trial court expressly allowed the evidence to be admitted on the theory that it was relevant to establish that Appellant must have been aware, from the strong and prevalent odor, that marijuana was in the car, contrary to his defensive theory. To be sure, the State's evidence of Appellant's prior "connection" to marijuana could give rise to inferences of character conformity, and it would therefore be arguably inadmissible, under Rule 404(b) (and, perforce, Rule 403), *if* that were the *only* purpose for which the State offered it. TEX. R. EVID. 404(b), 403. But it was not.

The Court ultimately says the State's evidence is inadmissible under Rule 403 at least in part because it does not establish that there was an odor of marijuana prevalent on any of the prior occasions, and it

---

at all and is totally innocent because of that lack of knowledge and awareness.

RR. Vol. V, p. 164. The defense certainly operated on a theory that Appellant should be found not guilty on the basis that he was an innocent passenger who was "just along for the ride," and that he should not be held responsible because he did not know about the marijuana or have any intent to possess it. There is certainly more from the record that could be culled to support this conclusion, but for brevity's sake, this footnote does not exhaustively detail all of the instances in which the defensive theory was emphasized and made apparent. And all of this clearly demonstrates that Appellant did not merely plead guilty and put the State to its proof, as his counsel argued at the trial court hearing about the admissibility of the evidence at issue in this case. *See* RR. Vol. V, pp. 163–64.

therefore cannot serve to show he had a familiarity with that odor on the occasion of the instant offense. Majority Opinion at 17. In other words, the Court suggests, the probative value of the evidence was so blatantly outweighed by its danger of character-conformity prejudice that it was inadmissible under Rule 403—as a matter of law—and the trial court lacked all discretion to conclude otherwise. It was not even within *Montgomery*'s zone of reasonable disagreement, the Court seems to say, for the trial court to have ruled any other way. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g on court's own motion) (applying the "zone of reasonable disagreement" rubric to an appellate court's review of a trial court's Rule 403 ruling).

Although this Court, by majority vote, may declare that the trial court abused its discretion by admitting the evidence at issue here, I disagree. This is *not* a case in which Appellant merely pled not guilty and put the State to its proof. Although his counsel argued that putting the state to its proof was all that they did, Appellant's obvious strategy went well beyond simply disputing the credibility or sufficiency of the State's evidence. Appellant embarked on, and followed through with, a whole-trial-strategy to leave an impression with his jury that he was an innocent victim of his drug trafficking friends. And the State merely responded with the evidence at its disposal rebutting that impression.

The evidence of Appellant's prior connections to marijuana in the APD cases was essentially generic, as the Court observes, and did not provide detail, including factual specifics about whether its odor was prevalent on those prior occasions. But that argument by the Court seems to me to go to the weight of the evidence, and thus it would not

absolutely bar the trial court from admitting it. A jury could readily infer from the sheer number of times Appellant had been found connected to marijuana in the APD cases, along with the evidence of his own prior conviction for possession of marijuana, that he must have some familiarity with its distinctive smell.[2] It was within the trial court's discretion to rely on that rationally available inference to conclude both that the evidence was relevant for a non-character-conformity purpose, and (more to the point in light of the Court's ultimate holding today) that it was *not* substantially more prejudicial than probative. The trial court did not abuse what is its (prior to this case anyway) considerable discretion in this area.

This evidence was not inadmissible under Rule 403 because, in the absence of sufficient "similarity," its probative value was insignificant. The degree of similarity required is purely a function of the inference that the proffering party seeks to establish. As Professor Imwinkelried has said, "[t]he test should be logical relevance rather than similarity. The better view is that the judge should demand proof of similarity only if the proponent's theory of logical relevance assumes similarity." 1 Edward J. Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE § 2:13, at 2-100–2-101 (2015). The only similarity required to support the logical inference that Appellant recognized the strong odor of marijuana as he sat in the back seat of the car was that numerous

---

[2] *Cf. Chess v. State*, 172 Tex. Crim. 412, 413, 357 S.W.2d 386, 387–88 (1962) (holding that a police witnesses was competent to testify—as non-expert witnesses—that he was "familiar" with the odor of marijuana and recognized it on a particular occasion).

prior incidents also connected him to marijuana in the APD cases.[3] That the State's evidence was no more elaborate than that actually contributes to the reasonableness of the trial court's conclusion that it was not substantially more prejudicial than probative under Rule 403. Any greater detail for the sake of gratuitous "similarity" might actually have undermined its probative value as measured against its prejudicial potential. *See Old Chief v. United States*, 519 U.S. 172, 186, 191 (1997) (where evidentiary detail is not strictly necessary to establish the relevance of extraneous misconduct evidence, for the Government to admit it anyway could render it substantially more prejudicial than probative for purposes of Federal Rule of Evidence 403) (citing FED. R. EVID. 403). The Court today errs to reason otherwise.

## II.   BAD TIMING

Professor Imwinkelried is of the view, as am I, "that subsequent acts are admissible so long as they are logically relevant." 1 Edward J. Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE § 2:12, at 2-93 (2015). That is the view that has long been taken by this Court, even before *Montgomery. See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) ("[E]vidence of subsequent crimes may be admitted for the purpose of showing intent.").

The instant offense occurred on March 8, 2012. The trial was held

---

[3] The Court devotes several pages of discussion to the "doctrine of chances." Majority Opinion at 8, 12–13. It concedes that the State does not assert that theory of admissibility, and neither did the court of appeals rely upon it. *Id.* at 12. Nevertheless, because the court of appeals cited *De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2000), in passing, the Court addresses that question. *Id.* Suffice it to say that that the logic of the inference in this case does not vitally depend on a similarity of the *details* of the charged offense to the extraneous misconduct, or on their peculiarity.

in April of 2017. The State presented evidence that, in between those two events, in 2014, Appellant was arrested for possession of a useable quantity of marijuana and a deliverable quantity of cocaine. The Court holds that an extraneous offense that post-dates the charged offense would not logically establish that Appellant recognized the odor of marijuana in March of 2012. Majority Opinion at 14. I do not disagree with that conclusion. But that should not be the end of the analysis with respect to the 2014 offense.

Although Appellant was not indicted in this case for possession of marijuana with intent to deliver it, the weight involved was more than 18 pounds—a deliverable amount. It was clearly the Appellant's hope to convince the jury in this case that he was just unlucky enough to have been discovered in the car with drug-runners even though he himself had no knowledge that there was any quantity of marijuana in the car. Though it occurred at least a year and a half after the indicted offense, his possession of a deliverable amount of cocaine and a nominal amount of marijuana in 2014 was still highly probative to refute the impression that Appellant hoped to give the jury of his innocent-bystander status.

### III.    TALK ABOUT EXTRANEOUS MATTERS

The Court enumerates several evidentiary bases upon which the extraneous misconduct evidence in this case was "inadmissible for reasons other than their extraneous character[.]" Majority Opinion at 13–15. It claims that these "other" bases for complaint, essentially about the *form* of the State's evidence, somehow contribute to its conclusion that the trial court abused its discretion under Rule 403. *Id*. at 19. But these "other" bases do not speak to how the trial court exercised its

discretion in determining the only issues presently before the Court: whether the evidence had *relevance* in any respect beyond bare inferences of *character-conformity*, and if so, whether its probative value was "substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 404(b) & 403. These issues have nothing to do with the *form* that the evidence might take. Whatever *form* the evidence might take presents "other," independent reasons for the opponent of the evidence to object to its admissibility. But these issues are completely apart from those that inform an analysis of whether a trial court has abused its discretion in applying the principles involved in Rules 404(b) and 403. They certainly have no bearing on the probativeness-versus-prejudicial-potential analyses.

None of those independent bases to object to the extraneous misconduct evidence that the Court alludes to today were raised in their own right on direct appeal in this case. Although Appellant made several complaints at trial to the form of the State's extraneous misconduct evidence, he did not reiterate those complaints on appeal—with one exception. He somewhat belatedly claimed at trial that the lack of personal knowledge of the State's main witness with respect to his prior APD cases in which he was connected to marijuana, and the hearsay nature of that testimony, combined to violate his Sixth Amendment right to confrontation. U.S. CONST. amend. 6. And he made that Sixth Amendment objection a basis for complaint on appeal. The court of appeals rejected these confrontation-based points of error, completely independently of its rejection of his points of error predicated on Rules

404(b) and 403. *See Valadez v. State*, No. 10-17-00161-CR, 2019 WL 2147625, at \*9–11 (Tex. App.—Waco, May 15, 2019) (mem. op., not designated for publication). The Sixth Amendment issue is not currently before us.

Appellant did *not* independently argue on appeal that the rules of evidence—requiring personal knowledge and prohibiting the admission of objected-to hearsay—were violated. TEX. R. EVID. 602, 802. Nor did he independently argue that the State failed to present "competent" evidence that the substances Appellant was connected to on other occasions was truly contraband—or, in other words, as I understand it, that the State failed to establish their authenticity as "contraband" under Rule 901(a). TEX. R. EVID. 901(a). The court of appeals addressed none of *these* potential arguments challenging the *form* of the State's extraneous misconduct evidence, since Appellant did not raise them on appeal. Understandably, then, Appellant has not attempted to raise them now, for the first time, on discretionary review. The Court grants Appellant an improper windfall by importing these unpresented—and, in any event, irrelevant—issues into the case under its Rule 403 analysis.[4]

---

[4] The Court also counts as an indicator of prejudice that the trial court did not include a limiting instruction regarding the extraneous misconduct in the court's charge to the jury. *See* Majority Opinion at 18 ("Regardless of whether the trial court had to give any such instruction, the lack of instruction is relevant to the prejudice assessment."). Once again, the case the Court cites does not support that proposition. In *Abdnor v. State*, 871 S.W.2d 726, 730 (Tex. Crim. App 1994), the appellant both asked for a limiting instruction when the evidence was admitted, and then asked for a limiting instruction in the jury charge. Here, by contrast, Appellant was not entitled to a limiting instruction in the jury charge because he failed to ask for such an instruction

The Court complains that I do not cite any authority for the proposition that these other, independent legal bases for objecting to the form of the evidence are not an appropriate facet of a Rule 403 analysis. Majority Opinion at 19–20. But the Court cites no case for the proposition that it *is* appropriate. The Court *does* cite *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2011). Majority Opinion at 15, 19. But nothing in the Court's unanimous opinion in that case remotely sanctions what the Court does today. Evidence is not "misleading" for purposes of a Rule 403 analysis, as the Court suggests, simply because the *form* it takes may be objectionable for reasons having nothing to do with Article IV of the Rules of Evidence: "Relevance and Its Limits."[5] To incorporate these considerations into the Rule 403

---

when the evidence was admitted. A trial court does not err to fail to give a limiting instruction in the jury charge under those circumstances. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). Once again, by taking the absence of a limiting instruction into account in the Rule 403 analysis, the Court grants Appellant a windfall. Moreover, in the absence of an appropriate limiting instruction, evidence is regarded on appeal as admissible for any purpose. *Id.* That being the case, it seems anomalous to hold the evidence to be more prejudicial than probative because of its character-conformity potential, when the jury was entitled to consider it here even for that purpose. Rules 404(b) and 403 render evidence *objectionable*, not incompetent or absolutely inadmissible even in the absence of an objection. And if part of the error-preservation protocol includes requesting a limiting instruction when the evidence is admitted, the Court should not subvert that ordinary appellate requirement—a "systemic" requirement, no less, *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016)—by incorporating the *absence* of such an instruction into the Rule 403 more-prejudicial-than-probative analysis.

[5] Indeed, we cannot even know, without first independently litigating the question, whether the form of the State's evidence was objectionable on these other, non-Article IV bases, much less whether any objection would be sufficient to somehow establish that the evidence is "misleading" for Rule 403 purposes! Because Appellant has not independently brought any of these

analysis is so peculiar, so anomalous, that it makes me think the onus ought to be on *the Court* to cite some authority—if it can—to *support* it.

### IV.    CONCLUSION

Neither trial nor appellate courts should lose sight (and the Court's opinion in this case—I am afraid—encourages such a loss of sight), that "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. Once a prosecutor has established that extraneous misconduct evidence has relevance that goes beyond inferences of *mere* character-conformity, he should be able to rely on that presumption in fashioning his case for the factfinder. Only in the most extreme situations should an appellate court intervene in prosecutorial strategy (where a trial court has not) by excluding relevant evidence on the belief that the evidence was not very compelling compared with its potential to mislead or confuse, or that the State did not really need that evidence in order to convince a jury to the level of confidence beyond a reasonable doubt. *See id*. at 390 ("[A]pplying the factors we have identified to the facts of the particular case, the trial court must be given *wide latitude* to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, *not* to exclude misconduct evidence as he sees fit.") (first emphasis added). In holding that the trial court abused its discretion under Rule 403 in this case, I believe the Court is wrong.

I respectfully dissent.

---

issues on appeal (other than the Sixth Amendment issue), they have not been briefed by the parties.

**FILED:** March 30, 2022
**PUBLISH**