

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00045-CR

_____

COREY BRANDON MORRISON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Marion County, Texas
Trial Court No. F15259

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Marion County jury convicted Corey Brandon Morrison of aggravated assault with a deadly weapon and assessed a sentence of ten years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Supp.). On appeal, Morrison argues that the evidence was legally insufficient to support the jury's verdict of guilt. Morrison also argues that the trial court erred by failing to include an extraneous-offense instruction in the jury charge on punishment. Because we find that the jury's verdict was supported by legally sufficient evidence and that Morrison was not egregiously harmed by any alleged jury-charge error, we affirm the trial court's judgment.

## I.     The Evidence Was Legally Sufficient to Support the Jury's Verdict of Guilt

### A.     Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Morrison "intentionally or knowingly threaten[ed] another, namely, HARRELL GENE CAMPBELL, with imminent bodily injury and . . . did then and there use or exhibit a deadly weapon, to-wit: a screwdriver, during the commission of said assault."

## B.    Analysis

Morrison's sole challenge is to the element of identity. According to Morrison, the evidence is legally insufficient to support the jury's verdict because Campbell never identified Morrison as the person who assaulted him with a screwdriver. We disagree with Morrison since the record demonstrates that Campbell identified him as the perpetrator of the offense.

At trial, Campbell testified that he was mowing his yard at 10:30 a.m. on July 1, 2020, when he noticed an unfamiliar vehicle in his driveway. Campbell approached the vehicle on his lawnmower and asked the person sitting inside if he could help him. According to Campbell, the person "reached down and got a screwdriver and thrust at [him] out of the [open] window and said, 'I'll kill you, you s-o-b.'" Campbell rode his lawnmower back toward his house and called the police. During cross-examination, when Morrison's counsel asked, "So you pull up beside him . . . and that's when you talked to my client," Campbell responded by saying, "Right."

3

When Morrison's counsel asked, "[W]as my client sitting in the car in the driver's seat," Campbell said, "He was sitting in the driver's seat." By making those statements, Campbell identified Morrison as the perpetrator of the offense.

Also, Alisha Riehl, a sergeant with the Marion County Sheriff's Department, testified that she was dispatched to Campbell's home, found a car matching the description of the suspect vehicle in Campbell's driveway, and "observed a gentleman sitting in the driver's seat." Riehl made an in-court identification of Morrison and said Morrison was the person who she saw in the driver's seat of the car on Campbell's property. According to Riehl, Morrison attempted to start his car to drive away, but she immediately ordered him out of the car and placed him in handcuffs. Riehl testified that the perpetrator had cards in his wallet issued to "Corey Morrison" and that "the jail was able to pull some records to find out that he was actually Corey Morrison." Most importantly, Riehl's body-camera footage, which clearly depicted Morrison, was played for the jury.[1]

Our review of the record shows that the evidence was legally sufficient for the jury to find that Morrison was the person who committed the aggravated assault against Campbell with the screwdriver. As a result, we overrule Morrison's first point of error.

## II.     Morrison Was Not Egregiously Harmed by Any Jury-Charge Error

In his last point of error, Morrison argues that he was egregiously harmed when the trial court failed to include an extraneous-offense instruction during punishment. We disagree.

---

[1]Morrison does not challenge the deadly weapon finding. Riehl testified that the screwdriver recovered at the scene was capable of causing serious bodily injury or death and that a person in Campbell's circumstances would believe imminent bodily injury was "possible and likely."

## A.     Standard of Review

"'[T]he jury is the exclusive judge of the facts,' but the trial court submits a charge to the jury 'distinctly setting forth the law applicable to the case.'" *Alcoser v. State*, 663 S.W.3d 160, 164 (Tex. Crim. App. 2022) (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. arts. 36.13, 36.14).  "The charge is meant to inform the jury of the applicable law and how to apply it to the facts of the case." *Id.* at 164–65 (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

"A jury-charge-claim analysis involves two steps:  First, we determine whether the charge is erroneous." *Id.* at 165.  "If it is, then we must decide whether the appellant was harmed by the erroneous charge." *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005)).  "There are two standards of review for jury-charge-error claims." *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)).  As in this case, "[i]f there was not a timely objection, the record must show 'egregious harm.'" *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

"An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* (citing *Almanza*, 686 S.W.2d at 171).  "A finding of egregious harm must be based on 'actual harm rather than theoretical harm.'" *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id.* (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)).  "Neither

5

party bears the burden to show harm." *Id.* (citing *Marshall v. State*, 479 S.W.3d 840, 842–43 (Tex. Crim. App. 2016)).

### B.    Analysis

"During the punishment phase, extraneous offense evidence may be offered for *any* relevant purpose, including proof of the defendant's character or propensity." *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007). Under Article 37.07 of the Texas Code of Criminal Procedure, "the Legislature has deemed that extraneous offense evidence is admissible for any relevant purpose during the punishment phase, but only if the State can offer proof that would allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that the defendant could be held criminally responsible for that act." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 37.07). Because "Article 37.07 is 'the law applicable' to all non-capital punishment proceedings[,] . . . the trial judge must *sua sponte* instruct the jury at the punishment phase concerning that law, including the fact that the State must prove any extraneous offenses beyond a reasonable doubt." *Id.*

For purposes of our analysis, we assume error. Even so, because Morrison did not object to the omission at trial, we will reverse only if he was egregiously harmed. Morrison argues that he was egregiously harmed by the introduction of four prior judgments of conviction, which were admitted "by agreement of counsel" with no objection. We disagree.

The prior judgments showed that Morrison pled guilty to and was convicted of the following four offenses: (1) conspiracy to distribute a controlled substance, (2) engaging in monetary transactions in property derived from specified unlawful activity, (3) criminal

6

mischief, and (4) assault causing bodily injury to a family member. The evidence also showed that two of the convictions became final as a result of Morrison's plea of "true" to an allegation that he violated the terms and conditions of his federal probation by testing positive for methamphetamine.

"In any final conviction, the evidence was subjected to judicial testing of guilt with a standard of proof of beyond a reasonable doubt, and the burden of proof was met." *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004). "In any probation, the defendant has [pled] guilty or been found guilty by a judge or jury." *Id.* "In all these circumstances, the burden of proof has been met. Thus, in all such cases no further proof of guilt is required." *Id.* The State rested its punishment case after publishing the prior judgments, which were sufficient to prove the extraneous offenses to the jury beyond a reasonable doubt. As a result, we find that Morrison was not egregiously harmed by the lack of an extraneous-offense instruction at punishment.[2] We overrule his last point of error.

---

[2]During the State's cross-examination of Morrison's mother, she testified that Morrison last held a job "four or five years ago." In response, the State introduced Morrison's sworn application for a court-appointed attorney, which stated that his last employment was in 2013. Morrison's mother then testified that she "guess[ed]" Morrison was correct about his last employment. Morrison argues that this shows egregious harm because the application for appointed counsel was shown "for the purpose of showing Appellant's mother's credibility as well as Appellant's lack of work[ ]history." The State did not characterize Morrison's lack of work history as an extraneous offense or prior bad act, and we decline to treat it as such.

## III. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     August 1, 2023
Date Decided:       August 16, 2023

Do Not Publish