

# NUMBER 13-23-00244-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PEDRO CANTU JR., Appellant,

v.

THE STATE OF TEXAS, Appellee.

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant Pedro Cantu Jr. appeals his conviction for aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a), (e). Cantu was sentenced to fifty years' imprisonment. By a single issue, Cantu contends the trial court erred by failing to supplement the jury charge with additional limiting instructions on the use of extraneous offense evidence. We affirm.

## I. BACKGROUND

At trial, Cassidy[1] testified that she had two children with Cantu, the oldest of whom is Grace, the complainant in this case, who was born in 2003. Cassidy testified that she and her children lived in Victoria between 2009 and 2012, and Cantu would "occasionally" visit during this time. Cassidy and the children subsequently moved to San Antonio, but Cantu did not follow.

In early 2015, Grace approached Cassidy and asked her, "Is it true that we cannot keep secrets from Jehovah God?"[2] In response, Cassidy explained that "God knows all things and sees all things." Grace then "spoke about having a secret, and she was afraid that she was going to get in trouble." Cassidy encouraged Grace to share her concerns, and that is when Grace outcried "about a specific night where . . . she remembered sleeping downstairs on the couch with her father." Grace detailed "that he had her . . . turn off the nightlight downstairs." Grace "said that her father had touched her in her middle part." And "[s]he said that he made her touch him, and she didn't know exactly what she was doing but that he—between his legs it felt wiggly and a lot of skin." Grace relayed that "it was his adult part." "She said that he told her, I'm going to throw you up in the air and catch you. And she said she just felt pain after that in her part—her private part." Grace specified to Cassidy, "His adult part was in my private part."

Grace was nineteen at the time of trial. Grace testified that she had a "very

---

[1] We have assigned a pseudonym to the complainant to protect her privacy. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"). To further protect her identity, we will refer to the complainant's mother as Cassidy. *See id.*

[2] Cassidy explained that, around this time, she was in the process of converting to be a Jehovah's Witness and "was also teaching [her] children."

inconsistent" relationship with Cantu growing up, but that when she was young, she "wanted . . . desperately" to have contact with her father. Grace testified that when she was "around 6 years old," Cantu visited for dinner one evening, and her parents asked her where she wanted to sleep. She chose to sleep on the couch downstairs with her father. Grace "was facing the wall, and [her] back was facing [Cantu]." Cantu then asked her "to turn the nightlight off."

After this, Grace "heard a wrapper, and [Cantu] asked [her] to hold something." Grace "thought maybe the remote was like under him, like it was uncomfortable and [she] was going [to] grab it and put it on the floor or something, but it turned out to be his penis." Grace remembered "it felt more like a balloon than skin." Grace next remembered "[h]im scooping [her] up and putting [her] on top." She initially "thought that he was trying to make [her] sleep inward so that he can be outside of the couch. But he put [her] on top." Grace "felt it go in, and it hurt." Grace "didn't know what was happening" and "was scared" and "confused." Grace stated that "[a]s soon as [she] grunted, he pushed [her] off." Grace testified unequivocally, "My dad raped me." She further specified that "[h]e stuck his penis in [her] vagina."

On the final day of trial, J.S. (Jasmine)[3] testified that she, too, was sexually assaulted by Cantu. According to Jasmine, her mother was in a relationship with Cantu, and he was in Jasmine's life when she was between the ages of six and nine. In November of 2014, when Jasmine was eight years old, there was a get-together at Jasmine's house. Jasmine testified that at some point, Cantu asked her to "go sit with

---

[3] Jasmine was a minor at the time of her testimony. Thus, we identify her by a pseudonym. *See* TEX. R. APP. P. 9.10(a) (defining sensitive data); TEX. FAM. CODE ANN. § 101.003(a) (defining "minor").

3

him" near the bonfire. Cantu covered the two of them with a blanket and then "started messing around with [her] pants and had unbuttoned them." Cantu then "put his hand down [her] pants and started playing around with [her], like, underwear and stuff." He "went underneath [her] underwear and started playing with [her] vagina." Jasmine testified that this lasted about "five or ten minutes." Afterwards, Jasmine went inside. Cantu and other partygoers followed shortly after, and Jasmine noticed that Cantu "had peed his pants." Jasmine testified that she did not immediately report this incident, but informed her mother when she was nine years old in April of 2015. Cantu did not request a contemporaneous limiting instruction on the use of Jasmine's testimony. *See* TEX. R. EVID. 105(b)(1).

The jury found Cantu guilty and sentenced him as described above. This appeal followed.

## II.    JURY INSTRUCTION

By his sole issue, Cantu argues that the trial court erred by denying his request during the charge conference that the jury be instructed it "cannot substitute the extraneous crimes or bad acts, if any, for the offense alleged in the indictment."

## A.    Applicable Law & Standard of Review

Article 36.14 of the code of criminal procedure requires the trial court to provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14; *see Delgado v. State*, 235 S.W.3d 244, 247 (Tex. Crim. App. 2007). "[A] limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant

4

requested a limiting instruction at the time the evidence was first admitted." *Delgado*, 235 S.W.3d at 251; *see* TEX. R. EVID. 105(b)(1). But "if a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge." *Delgado*, 235 S.W.3d at 251. "A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge." *Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); *see* TEX. R. EVID. 105(b)(1) ("A party may claim error in a ruling to admit evidence that is admissible against a party or for a purpose . . . only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly.").

In reviewing an appellant's challenge to the jury charge, "[f]irst, we determine whether the jury instruction is erroneous." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Second, if error occurred, then an appellate court must analyze that error for harm." *Id.* "If a defendant timely objects to alleged jury-charge error, the record need only show 'some harm' to obtain relief." *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). When no objection is made to the alleged error in the jury charge, reversal is not required unless the error resulted in egregious harm. *Id.* "Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)).

**B.** **Analysis**

Here, the jury instruction on extraneous offenses provided:

The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any were committed.

Cantu argues that the trial court erred by not also including his requested instruction:

You are further instructed that you cannot substitute the extraneous crimes or bad acts, if any, for the offense alleged in the indictment.

Even if you believe the extraneous crimes or bad acts beyond a reasonable doubt, you must still consider whether the evidence presented proves each and every element of the offense charged in the indictment beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

Cantu contends that he made a timely request for a limiting instruction because counsel addressed "the jury charge problem . . . at its earliest opportunity . . . , and the trial court found that [its] decision to deny this requested instruction was 'preserved' for appellate review." Cantu is correct that, upon denying the supplemental instruction he requested, the trial court noted that the "written request for instruction has been filed, and it's preserved for appeal." But to be entitled to the jury instruction he requested, Cantu was required to first request that the extraneous offense evidence be admitted for limited purposes, something he recognizes he wholly failed to do. *See* TEX. R. EVID. 105(b)(1); *Delgado*, 235 S.W.3d at 251.

If the jury is required to consider evidence in a limited manner, then it must do so from the moment the evidence is admitted. Allowing the jury to consider evidence for all purposes and then telling them to consider that

6

same evidence for a limited purpose only is asking a jury to do the impossible.

*Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001).

Cantu concedes that he failed to request a limiting instruction at the time the evidence was admitted.[4] Indeed, the trial court discussed this issue at the end of the first day of trial, stating, "There was a hearing that the Court was anticipating having with regards to an extraneous act or transaction. However, the Defense, I believe, mentioned it in opening statements. Are we still going to need to have the hearing on that extraneous bad act or transaction, [defense counsel]?" Defense counsel responded, "No, Judge."

Cantu allowed Jasmine's testimony to be admitted without requesting any limitation to the jury's consideration of it. "Because appellant did not request a limiting instruction at the first opportunity, the evidence was admitted for all purposes." *See id.* at 895. And "because the evidence was admitted without limitation, a limiting instruction was not within the applicable law of the case." *See id.* Accordingly, it was not error for the trial

---

[4] In making this concession, Cantu asserts that "[t]his record is silent as to defense counsel's trial strategy in not objecting to, and/or failing to request a limiting instruction, as to [Jasmine]'s testimony not bearing upon [Cantu]'s guilt." *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) ("Texas courts have frequently stated that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy." (citing *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.—Beaumont 1996, pet. ref'd))). Even if it was true that the record was silent as to counsel's strategy, we do not see how that is relevant to whether Cantu was entitled to the jury instruction he requested. But, in fact, the record is not silent as to why defense counsel pursued this strategy. In defense counsel's opening, he brought the issue up, remarking, "[Y]ou're going to see a common theme throughout this, ladies and gentlemen. You're going to see [an] angry ex with a young child and a sex allegation that arises. And then you're going to see another angry ex with a young child and another sex allegation that arises." *See Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) (concluding that an opening statement can open the door to the admission of extraneous offense evidence). Counsel also explicitly referenced the extraneous outcry involving Jasmine, stating elsewhere in his opening, "April 19th of 2015, . . . [Jasmine] . . . makes an outcry."

Thus, it was part of defense counsel's strategy to paint Cassidy as a vindictive ex-girlfriend, conspiring to concoct the allegation in this case out of jealousy or spite. And if the extraneous offense evidence was admissible for this purpose, then the evidence was also admissible to combat the assertion that Grace's allegation was not true. *See id.*

court to deny Cantu's request to supplement the extraneous offense evidence instruction in the jury charge. *See id.*; Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 36.14.

We overrule Cantu's sole issue on appeal.

### III.    Cᴏɴᴄʟᴜsɪᴏɴ

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Delivered and filed on the
2nd day of May, 2024.