

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

NO. PD-1101-19

WILLIE MAURICE HERVEY, JR., Appellant

v.

THE STATE OF TEXAS

ON STATE'S MOTION FOR REHEARING ON STATE'S PETITION FOR
DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
WICHITA COUNTY

RICHARDSON, J., delivered the opinion of the Court in which HERVEY, NEWELL, KEEL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. KELLER, P.J., concurred. YEARY, J., filed a dissenting opinion.

## OPINION

We grant rehearing on the State's motion in this cause to address the question of whether Appellant's entitlement to a voluntariness instruction was preserved for appellate review. We withdraw our prior holding in *Hervey v. State*, No. PD-1101-19, 2024 WL

1901618 (Tex. Crim. App. May 1, 2024) (not designated for publication) on only the preservation issue which is the subject of the State's Motion for Rehearing. The prior opinions are attached below as Attachment 1. Accordingly, we keep the remainder of the opinion intact and affirm the trial court's conviction below.

Delivered: November 6, 2024

Do Not Publish



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-1101-19

---

**WILLIE MAURICE HERVEY JR., Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS WICHITA COUNTY

---

RICHARDSON, J., delivered the opinion of the Court in which HERVEY, NEWELL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. KELLER, P.J., filed a concurring opinion in which YEARY and KEEL, JJ., joined.

## **O P I N I O N**

Willie Maurice Hervey Jr., Appellant, shot and killed Mark Austin Hawkins during a physical struggle after pointing a gun at him in a drug transaction gone bad. He was indicted for murder and given two lesser-included offense instructions but only convicted of murder. The questions on discretionary review are (1) whether a *sua sponte*

voluntariness-of-conduct instruction preserved the issue of voluntariness, (2) whether Appellant was entitled to a voluntariness instruction, (3) whether the trial court's *sua sponte* instruction was adequate, and (4) whether the lack of voluntariness instructions in the lesser-included charges of manslaughter and criminally negligent homicide resulted in harm.

For the reasons below, we first find that the issue of entitlement to a voluntariness instruction was not preserved for appellate review. Additionally, we find that the *sua sponte* voluntariness instruction was sufficient though not ideal. Finally, we find that Appellant was not harmed by the lack of voluntariness instructions in either of the lesser-included offenses because the evidence did not raise the issue. Accordingly, we reverse the court of appeals below and affirm the trial court's conviction of Appellant for murder.

**FACTS**

Viewing the facts in the light most favorable to the appealing party, Willie Maurice Hervey Jr., Appellant, drove to the home of a friend, De'Amber, on the morning of April 20, 2014, Easter Sunday, and smoked their last marijuana joint together. Because April 20 also happened to be a date celebrated by marijuana lovers, Appellant told De'Amber that he had run out of marijuana and wanted to purchase more. De'Amber called one of her contacts, Mark Austin Hawkins, the victim in this case, to see how much marijuana was available for sale and its cost. At some point, the phone was passed to Appellant so that Hawkins and Appellant could directly discuss quantity and price. Both agreed to twenty-eight grams of marijuana at the price of $250, but did not agree on a place for the exchange.

Returning to his girlfriend's home, Appellant received a call from Hawkins offering to meet at a local Denny's. However, as Appellant was leaving his girlfriend's driveway, Hawkins called him again and told him to meet Hawkins at Hawkins's home because Hawkins was having car trouble. When Appellant pulled into Hawkins's driveway, Hawkins "jumped in the car." After Appellant showed the money, Hawkins showed him a jar of marijuana and Appellant began extracting the marijuana to weigh it on a scale he brought with him. Appellant testified that Hawkins appeared "real fidgety" while this was going on.

When the scale weighed the marijuana at twenty-six grams (two grams short of the agreed amount), Appellant confronted Hawkins about the missing amount. Hawkins said he didn't have it and had no means to obtain any more to make up the difference. Angered, Appellant refused to continue with the exchange and ordered Hawkins to get out of the car. Instead of getting out, Hawkins offered to reimburse Appellant the missing amount by giving it to De'Amber at a later date. Because Hawkins would not leave the car, Appellant then drew his handgun,[1] pointed or stuck the barrel in Hawkins's neck, and pushed him with it in order to "scare him out of the car."

Hawkins then grabbed the handgun with both hands and began wrestling for control over the weapon inside the car. Appellant testified that although Hawkins was trying to

---

[1] Appellant owned a "Glock" brand handgun which he frequently carried with him for personal protection. He testified that he had never had firearms safety training of any kind nor any advanced understanding of its mechanical functioning.

gain control over the gun, the gun remained in his hand the entire time with his trigger finger on the trigger guard (and not the trigger). Nevertheless, Appellant testified that Hawkins pulled on the gun causing Appellant's trigger finger to slip inside the trigger guard and pulling the trigger during the course of the struggle.[2]

Q:     -- where was your finger?

A:     It was on the trigger guard, the – I don't know how to explain it, the – little guard part that keeps you from pulling the trigger.

Q:     And when [Hawkins] pulls to get out of the car –

A:     Right.

Q:     -- you're pulling the other direction?

A:     Yes, ma'am. It was – it was really all in like one motion. He pulled and I'm pulling back just to – trying to keep it in my possession and I guess my finger slipped inside the – excuse me, the trigger guard. That's when the gun goes off.

Appellant further testified that he had no intention of shooting Hawkins and that the pulling of the trigger was involuntary. After the gun went off, Hawkins ran from the car and collapsed on his porch. He died soon after. Appellant, however, uncertain if the gun actually went off, grabbed the jar of marijuana and drove off. A friend of Hawkins inside Hawkins's home heard the gunshot and saw the car Appellant's car speed away. Hawkins's friend was able to give a description of the driver and the vehicle including a partial license plate.

---

[2] Appellant gave three interviews to the police. The first interview stopped as soon as Appellant invoked his right to an attorney. The story given during the second interview, Appellant admitted, was a complete fabrication. During the third interview, Appellant reenacted the struggle for the gun with the victim. However, the reenactment is inconsistent with his trial testimony concerning the same struggle.

Returning to his girlfriend's house again, Appellant changed clothes and left the car there. After throwing the gun into a drawer, Appellant told his girlfriend, "If the police ever come asking about my whereabouts, where I've been, you know, tell them I've been with you all night." Appellant then left with a friend and was later arrested by police.

## PROCEDURAL HISTORY

Appellant was indicted for murder. Jury instructions were given at trial for the two lesser-included offenses of manslaughter and criminally negligent homicide. The murder charge was premised on two alternate theories of either "intentionally or knowingly caus[ing] the death of [Hawkins]," or "with intent to cause serious bodily injury . . . commit[ing] an act clearly dangerous to human life that caused the death of [Hawkins]."

At the conclusion of evidence, the trial court *sua sponte* proposed the following jury charge:

> An "Act" means a bodily movement, whether voluntary or involuntary, and includes speech.
>
> * * *
>
> For the offense of murder, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the result.
>
> Now, bearing in mind the foregoing instructions, if you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April, 2014, in Wichita County, Texas, [Appellant] did then and there intentionally or knowingly cause the death of [Hawkins], by shooting the body and/or torso of [Hawkins] with a firearm;

-OR-

5

If you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April 2014, in Wichita County, Texas, [Appellant] did then and there, with intent to cause serious bodily injury to [Hawkins], commit an act clearly dangerous to human life that caused the death of [Hawkins], by shooting [Hawkins] on or about the body and/or torso, then you will find the defendant guilty of Murder as alleged in the indictment.

But if you do not so believe, or if you have reasonable doubt thereof, or if you have a reasonable doubt that the shooting was not the voluntary act or conduct of the defendant, you will acquit the defendant and next consider whether the defendant is guilty of the offense of manslaughter.

Unlike the instruction for murder, there were no voluntariness instructions offered in either of the lesser-included offenses of manslaughter and criminally negligent homicide.[3]

---

[3] The manslaughter and criminally negligent homicide jury instructions were identical to each other except for the offense and the mens rea:

Now, bearing in mind the foregoing instructions, if you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April, 2014, in Wichita County, Texas, the defendant Willie Maurice Hervey did then and there *recklessly* cause the death of an individual, namely Mark Austin Hawkins, by bringing a loaded firearm to a drug deal, and/or brandishing a loaded firearm during a drug deal, and/or putting a loaded firearm to the neck of the said Mark Austin Hawkins, and/or engaging in a struggle with the said Mark Austin Hawkins while holding and/or displaying a loaded firearm, then you will find the defendant guilty of *Manslaughter* as included in the indictment.
***
Now bearing in mind the foregoing instructions, if you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April 2014, in Wichita County, Texas, the defendant Willie Maurice Hervey did then and there cause the death of an individual, namely Mark Austin Hawkins, *by criminal negligence* by bringing a loaded firearm to a drug deal, and/or brandishing a loaded firearm during a drug deal, and/or putting a loaded firearm to the neck of the said Mark Austin Hawkins, and/or engaging in a struggle with the said Mark Austin Hawkins while holding and/or displaying a loaded firearm, then you will find the defendant guilty of *Criminally Negligent Homicide* as included in the indictment. But if you do not so believe, or you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

Appellant's counsel requested "one simple paragraph" that "hits a lot of the facts and talks about voluntary conduct" and proposed two separate alternatives for voluntariness in place of the trial court's.

MEMBERS OF THE JURY:

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Willie Maurice Hervey Jr., did cause the death of Mark Austin Hawkins, by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was the result of an accidental discharge of the gun while Mark Austin Hawkins and the defendant were struggling or scuffling for possession of the gun and was not a voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."

Alternatively, Appellant offered:

MEMBERS OF THE JURY:

You have heard evidence that, when the defendant pulled the trigger, his act was not voluntary because his act in pulling the trigger was caused by Mark Austin Hawkins pulling on the gun.

A person commits an offense only if the person voluntarily engages in an act constituting an offense. An act is a bodily movement. An act is voluntary if it is performed consciously as a result of effort or determination.

An act is not voluntary if it is a non-volitional result of another person's act or it is set in motion by some independent force.

The requirement that the act constituting the offense be voluntary is separate and distinct from the requirement that the defendant have acted with one or more culpable mental states.

If you have a reasonable doubt as to the defendant's conduct being voluntary you will say so by a verdict of "Not Guilty."

7

Appellant's counsel requested that the voluntariness paragraph apply to the lesser-included offenses. The trial court overruled Appellant's objection and denied his requests. The jury subsequently found him guilty of murder and sentenced him to 70 years in prison.

On appeal, Appellant claimed that the trial court erred by not providing the jury a proper voluntariness-of-conduct instruction, "*i.e.*, whether his act of shooting Hawkins was voluntary, thereby depriving him of his only defense and ensuring that he would be found guilty."[4] Appellant further claimed harm because, the entire case pivoted on whether his act of pulling the trigger was voluntary. The State argued:

(1) There was no error because Appellant received a voluntariness instruction.
(2) Even if there was error, Appellant did not preserve it because the objection on appeal did not match his objection before the trial court.
(3) Thus, under the egregious harm standard (assuming error), there was no harm, or alternatively, there was no egregious harm because of the strong circumstantial evidence of voluntarily shooting the victim and because neither the State nor Appellant emphasized the voluntariness instruction during closing arguments.

On appeal, the court of appeals reversed and remanded the case to the trial court. The appellate court below held the voluntariness instructions were inadequate for two reasons: First, the trial court's voluntariness instruction was incomplete because it was not specific enough. The trial court should have specifically instructed the jury to acquit

---

[4] *Hervey v. State*, No. 05-17-00823-CR, 2019 WL 3729505, at *3 (Tex. App.—Dallas Aug. 8, 2019) (mem. op., not designated for publication).

8

Appellant if they found that "the shooting was caused by the independent act of Hawkins pulling on the gun and thereby causing the appellant's finger to pull the trigger."[5] Second, the trial court erred when it attached a voluntariness instruction to only the murder charge but not the lesser charges: "From a plain reading of this charge, the jury could have believed that voluntariness-of-conduct was not applicable to those offenses."[6]

## ANALYSIS

On discretionary review, the State asserts that it did not forfeit consideration of entitlement on voluntariness-of-conduct. The State next argues that Appellant was not entitled to the voluntariness instruction. Alternatively, the State disputes the specificity required by the lower appellate court's ruling below in applying the facts to the law applicable to the case. The State finally disputes whether the lack of voluntariness instructions in the lesser-included offenses, assuming Appellant was even entitled to them, caused any harm given that the jury found him guilty of the greater offense which included a voluntariness instruction.

### Preserving Error in Jury Instructions

"[T]he trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions."[7] Generally, the trial court is not required to "give instructions

---

[5] *Id*. at *16.

[6] *Id*.

[7] *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

9

on traditional defenses and defensive theories absent a defendant's request."[8] Though the trial judge must *sua sponte* set forth the law applicable to the charged offenses, "it does not inevitably follow that he has a similar *sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics."[9] And because a party may willingly forego a tactical option at the trial level for strategic purposes, in the absence of an objection to the court's charge, reversal is warranted only if the error is egregious.[10]

### The State failed to preserve error regarding Appellant's entitlement to a voluntary act instruction.

As the record shows, the trial judge *sua sponte* presented a jury charge that included an instruction regarding voluntariness. Though the State and counsel for Appellant spent time discussing the adequacy of its wording, the State never objected to nor questioned whether Appellant was even entitled to the instruction. Consequently, the State forfeited its right to challenge whether Appellant was entitled to the instruction on appeal.

---

[8] *Delgado*, 235 S.W.3d at 249.

[9] *Id.*

[10] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see also Delgado*, 235 S.W.3d at 250 ("Because of the strategic nature of the decision, it is appropriate for the trial court to defer to the implied strategic decisions of the parties by refraining from submitting lesser offense instructions without a party's request. It is clear that the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one. Likewise, any error in the improper submission of a lesser included instruction is waived if the defense fails to object to the instruction.").

### Sufficient Jury Instructions

We next turn to whether the voluntariness instructions given by the trial judge were sufficient. Under Article 36.07 of the Texas Code of Criminal Procedure, the trial judge must deliver to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury."[11] In addition to fully instructing the jury on the "law applicable to the case," we have required that the trial judge "apply that law to the facts presented."[12]

> It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial. This is because the jury must be instructed under what circumstances they should convict, or under what circumstances they should acquit. Jury charges which fail to apply the law to the facts adduced at trial are erroneous.[13]

Nevertheless, Article 36.14 "is designed to prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome."[14] Thus, "a trial court should avoid any allusion in the jury charge to a particular fact in evidence, as

---

[11] TEX. CODE. CRIM. PROC. art. 36.14.

[12] *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see also Harris v. State*, 522 S.W.2d 199, 202 (Tex. Crim. App. 1975).

[13] *Gray*, 152 S.W.3d at 127-28.

[14] *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019).

the jury might construe this as judicial endorsement or imprimatur."[15] Although a correct jury charge must "accurately set out the law" and be "authorized by the indictment," it may not "unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability" because it might impermissibly comment on the weight of the evidence against the State.[16] "Even a judge's innocent attempt to provide clarity for the jury by including a neutral instruction can result in an impermissible comment on the weight of the evidence because the instruction singles out a particular piece of evidence for special attention which the jury may then focus on as guidance from the judge." [17] Accordingly, we have warned against inserting an unnecessary "special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense."[18]

### Law on Voluntary Acts

Under Section 6.01(a) of the Texas Penal Code, "A person commits an offense only if he *voluntarily* engages in conduct, *including* an act, an omission, or possession."[19] "The

---

[15] *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008).

[16] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[17] *Beltran De La Torre*, 583 S.W.3d at 617.

[18] *Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007).

[19] TEX. PENAL CODE 6.01(a) (emphasis added).

operative word under Section 6.01(a), for present purposes, is 'include.'"[20] Thus, under the Court's construction, the "voluntary act" requirement "does not necessarily go to the ultimate act (*e.g.*, pulling the trigger)."[21] Instead, this Court has long held that "a person voluntarily engages in conduct when the conduct *includes* . . . a voluntary act and its accompanying mental state."[22] In other words, we have only required that "criminal responsibility for the harm must 'include an act' that is voluntary (*e.g.*, pulling the gun, pointing the gun, or cocking the hammer)."[23] "That such conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary."[24]

### The trial court's voluntariness instruction was neither erroneous nor harmful.

Here, the voluntariness instruction envisioned by the court of appeals (and sought by Appellant) to limit the issue solely to an accidental pulling the trigger as a result of the struggle with Hawkins was erroneous. Doing so would have unnecessarily restricted the State's theories of liability. It would have eliminated the inclusion of other undisputed

---

[20] *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003).

[21] *Id*.

[22] *Joiner v. State*, 727 S.W.2d 534, 537 (Tex. Crim. App. 1987).

[23] *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003); *Conroy v. State*, 843 S.W.2d 67, 72 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("Appellant has not contested that his conduct leading up to the shooting was intentional. He merely argues that his act of shooting the deceased was unintentional. Even assuming that the discharge of the weapon was unintended, the intentional pointing of a weapon is a voluntary act and the resulting death is imputable to the appellant.").

[24] *Joiner v. State*, 727 S.W.2d 534, 537 (Tex. Crim. App. 1987).

voluntary acts (i.e., pulling a loaded gun during a drug transaction, or pointing the gun at Hawkins at point-blank range) as possible predicates for the voluntary act requirement. Not only would this have made the State's burden higher under the facts of this case, it would have also constituted an impermissible comment on the evidence by specifically focusing on a single piece of defensive evidence for special attention. In contrast, the trial court's jury instruction did not impermissibly limit the State but also allowed for acquittal if the jury concluded the voluntary act requirement was not met. To the extent that the court of appeals found that the instruction was not specific enough and harmful was error.

### **Voluntariness and the Lesser-Included Charges**

Under the Manslaughter and Criminally Negligent Homicide charges, the State took the position that Appellant's *actus reus* leading to Hawkins's death were: (1) bringing a loaded firearm to a drug transaction; (2) brandishing the loaded firearm during that drug transaction; (3) putting the firearm to the neck of the victim; and/or (4) engaging in struggle with the victim while holding the firearm. The State alleged that these acts were committed either recklessly or with criminal negligence where it was foreseeable that serious bodily injury or death could result. When viewed separately, there was no evidence raised to suggest that any of these acts were actions Appellant engaged in against his will. Appellant chose to bring a weapon to the drug transaction; Appellant chose to pull it out and stick it in Hawkins's neck; and Appellant chose to engage in the struggle for the weapon after sticking the gun in Hawkins's neck and continue in the struggle until Hawkins was shot. The choice to continue was reflected in Appellant's own testimony where Appellant

14

indicated to Hawkins mid-struggle that he would not relinquish control of the gun and that Hawkins's efforts to gain control over the weapon were futile.[25] Moreover, these acts combined constitute aggravated assault with a deadly weapon—a felony offense. It was entirely foreseeable that such a violent assault would lead to serious bodily injury or even death. Again, none of the evidence even remotely suggested that Appellant was forced by "an independent event such as the conduct of a third party" to commit such violence under either lesser-included theory.[26] Thus, Appellant was not entitled to an instruction on the voluntariness of his acts on either lesser-included offense. And because he was not entitled to the instruction, there was no harm.[27]

## CONCLUSION

The issue of whether he was entitled to a voluntariness instruction wasn't preserved. Even if it was, the instructions given were sufficient. Additionally, there was no harm in omitting the same instructions from the lesser-included offenses because he wasn't entitled to them. Accordingly, we reverse the court of appeals below and affirm the trial court's conviction of Appellant for the offense of murder.

---

[25] *Id.*

[26] *Rogers v. State*, 105 S.W.3d 630, 635 (Tex. Crim. App. 2003).

[27] Alternatively, even if he hypothetically were entitled, there would be no harm since he was convicted on the greater murder offense where the jury did find the presence of a voluntary act.

DELIVERED: May 1, 2024

DO NOT PUBLISH



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1101-19

### WILLIE MAURICE HERVEY, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### WICHITA COUNTY

KELLER, P.J., filed a concurring opinion in which YEARY and KEEL, JJ., joined.

The Court says that the State forfeited error by not objecting to the inclusion of a defensive instruction in the jury charge. This holding is problematic for four reasons and is not necessary to the resolution of the case. First, the State is not the appealing party, and the Court cites no authority for the proposition that a non-appealing party can forfeit jury charge error in this way. Second, the Court's conclusion is at odds with our recent decision in *Lozano v. State*,[1] where we held that an

---

[1] 636 S.W.3d 25 (Tex. Crim. App. 2021).

error in a defensive instruction was harmless because the defendant was not even entitled to the instruction. Third, the Court's forfeiture conclusion is inconsistent with the holding in *Almanza v. State*[2] that the absence of an objection to an error in the jury charge does not forfeit the error entirely but merely changes the harm analysis. Fourth, by encouraging the State to object when the defendant's entitlement to a defensive issue is uncertain, the Court's forfeiture rule undermines the policy of taking a cautious approach that favors giving defensive instructions. For these reasons, I think the Court should just assume, without deciding, that Appellant was entitled to a voluntariness instruction on the charged offense and then proceed with the remainder of its analysis.

**1. The State is not the appealing party here.**

The Court cites no authority for the proposition that the law of forfeiture can work in the way the Court claims. The State prevailed at trial by obtaining a conviction and is not the appealing party. An appellee, who is the "winning" party, does not have to preserve error.[3] There is perhaps a sense in which the State can be said to have "lost" because Appellant got a defensive issue that the State now thinks he was not entitled to. But the State is not asking for relief. It is not filing a cross-point asking us to find error in the trial court.[4] It is simply asking this Court not to grant relief on Appellant's complaint because Appellant's non-entitlement to the instruction means that he received a windfall, and so suffered no harm. If it hadn't done so before, the Court legitimized that sort of argument in *Lozano*.

**2. The Court's forfeiture holding is contrary to *Lozano*.**

---

[2] 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

[3] *Martell v. State*, 663 S.W.3d 667, 672 (Tex. Crim. App. 2022).

[4] *See* TEX. CODE CRIM. PROC. art. 44.01(c).

In *Lozano*, the jury charge included the defense of deadly force in self-defense.[5] But the self-defense instructions included erroneous language about a duty to retreat.[6] In finding the errors harmless, we did a full-blown *Almanza* analysis, but the fact that Appellant was not even entitled to a deadly-force self-defense instruction was a determinative part of each of the four factors in the analysis.[7] In looking at the entirety of the jury charge, we explained, "[T]he jury charge factor only slightly weighs in favor of an egregious-harm finding here where there is no evidence that Appellant acted in self-defense with his use of deadly force when he shot and killed Jorge."[8] We held that the "state of the evidence and contested issues" factor weighed against Appellant because he "was not entitled to a charge on self-defense"[9] and "deadly force self-defense was not raised by the evidence."[10] On the "arguments of the parties" factor, we held, "Erroneous arguments of counsel about a defensive issue not raised by the evidence do not weigh in favor of finding egregious harm because the error benefitted the defendant."[11] And on the "other relevant information" factor, we explained that, though the self-defense instruction was worded erroneously, the defendant "was still provided with the windfall of a possible acquittal" and that the instructions "increased the State's

---

[5]  636 S.W.3d at 29-30.

[6]  *Id.*

[7]  *Lozano*, 636 S.W.3d at 31-35.

[8]  *Id.* at 31-32.

[9]  *Id.* at 32.

[10]  *Id.* at 34.

[11]  *Id.*

burden of proof" beyond what the law actually required.[12]

*Lozano* did not say whether the State objected to the instructions. But the analysis clearly assumed that such an objection would not be necessary. A major point *Lozano* made was that the defensive instruction, albeit erroneous, was still a "windfall" to the defendant. That "windfall" language is reminiscent of our decision in *Malik v. State*, where we held, in the context of a sufficiency review, that the State did not have to object to an error in the jury charge that increased the State's burden of proof.[13] The reasoning in *Malik* supports the holding in *Lozano*: A windfall in the jury instructions should not result in a new trial any more than it would result in an acquittal. If the wrongness of a defensive instruction just makes the instruction less favorable, and the defendant was not entitled to the instruction in the first place, it still can only benefit the defendant, and so the error is harmless.[14]

The Court does not even cite *Lozano*, much less distinguish or overrule it. *Lozano* makes sense, and we should continue to adhere to it.

**3. The Court's forfeiture holding conflicts with *Almanza*.**

Saying that the State "lost" and can forfeit error creates problems under our *Almanza* jurisprudence. Under *Almanza*, error in the jury charge is never truly forfeited—the absence of an

---

[12] *Id.* at 34-35.

[13] 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (criticizing old *Benson*/*Boozer* rule that required an acquittal when "the State failed to object to an erroneous and/or unnecessary instruction favorable to the defendant" because it contemplated that a guilty person would be acquitted because he "received a windfall in the jury instructions").

[14] If, in an unusual case, an erroneous defensive instruction puts a defendant in a worse position than he would be without the defensive instruction at all, nothing in *Lozano* prevents an appellate court from considering that fact in conducting a harm analysis.

objection simply affects the standard of harm, making "egregious harm" the applicable harm standard.[15] What might seem like an exception to that principle is really an expression of it: A defensive issue that is raised by the evidence but not requested by the defense is forfeited, but that is because *it is not error* for the jury charge to omit an unrequested defensive issue, even one that is raised by the evidence.[16] But the *inclusion* of a defensive issue that is *not* raised by the evidence is clearly an "error" in the jury charge, even if that particular error prejudices only the State.[17]

If *Almanza* applies to the defendant, why doesn't it apply to the State? If *Almanza* applied to the State, the State's failure to object to the inclusion of the defensive issue in the charge would be analyzed for egregious harm. But then the question would be: *How* would that harm analysis work? By the time the case is before an appellate court, the jury will have convicted the defendant despite the erroneous submission of a defensive issue. Reversal in favor of the defendant would seem to undo the obvious lack of harm to the State shown by the fact that the defendant was convicted. So could we find harm by looking at the State having to retry the case on the basis of an error in a defensive instruction the defendant was not entitled to? Practically speaking, that would duplicate the result of the rule in *Lozano*, but by a more circuitous route.

**4. The Court's forfeiture holding conflicts with taking a cautious approach to defensive instructions**.

---

[15] *Williams v. State*, 273 S.W.3d 200, 223 (Tex. Crim. App. 2008).

[16] *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018).

[17] *See Bennett v. State*, 726 S.W.3d 32, 36-37 (Tex. Crim. App. 1986) ("That it would have been *error* for the trial court to have given an instruction on the law of defense of a third person *as it pertained to appellant, since that issue was not raised by the evidence*, does not mean the court lacked authority to instruct the jury on the deceased's right to defend a third person, should a full assessment of appellant's claim of self-defense, as developed by the evidence, warrant it.") (emphasis added).

In *Grey v. State*, we explained, in the context of lesser-included offenses, that the State might sometimes want a lesser-included offense even when a defendant might not be entitled to its submission.[18] We explained that, among other reasons, "[t]here can be a legitimate dispute about the meaning of the language" of an element of an offense and that "appellate interpretations of statutes are not always foreseeable and can even involve the overruling of precedent."[19] We counseled that the State should take a "cautious approach" that favors submitting lesser-included offenses.[20] This approach should be based not merely on maximizing the chance of a conviction but also on meeting the prosecutor's duty "to see that justice is done."[21]

Lesser-included offenses are in some ways like defensive issues,[22] and I think the reasoning in *Grey* applies here. The cautious approach is to err on the side of the defendant when it comes to giving a defensive instruction. In a marginal case, where the defendant's entitlement to a defensive instruction is uncertain, it would be better for the trial court to give the instruction rather than have the parties litigate it on appeal. The State might refrain from objecting for just that reason. Such caution should be encouraged. But the Court's forfeiture holding today is contrary to a cautious approach because it would encourage the State to object in a marginal situation, lest it lose an argument for upholding the conviction later on appeal. And if the State objects more often to defensive instructions, trial courts are going to deny them more often.

---

[18] 298 S.W.3d 644, 650-51 (Tex. Crim. App. 2009).

[19] *Id.*

[20] *Id.* at 651.

[21] *Id.*

[22] *Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010).

**5. We do not need to address the forfeiture issue.**

If the Court wishes to avoid addressing whether the submitted voluntariness defensive issue was raised by the evidence in this case, it can do so without imposing a forfeiture rule. The Court decides this case adversely to Appellant anyway, so all it has to do is assume without deciding that the voluntariness instruction was raised by the evidence and then continue with the remainder of its analysis.

Because the Court creates an untenable forfeiture rule that conflicts with *Lozano*, *Malik*, and *Almanza*, and conflicts with a cautious approach to submitting defensive issues, I cannot join its opinion but concur in the Court's judgment.

Filed: May 1, 2024
Do Not Publish